JOHN CAPPELLO, Plaintiff, *v.* UNION CARBIDE & CARBON
CORPORATION et al., Defendants.

Supreme Court, Special Term, Niagara County, March 16, 1951.

*John E. Runals* and *Thomas R. Mathias* for defendants.

*George A. Orr, Jr.,* for plaintiff.

WARD, J. This is a motion by the defendants under rule 113 of the Rules of Civil Practice for an order dismissing the plaintiff's amended complaint herein and directing the entry of judgment in favor of the defendants. The defendants move on the grounds that the amended complaint fails to state facts sufficient to constitute a cause of action against the defendant, Union Carbide & Carbon Corporation, and that the plaintiff is not the real party in interest because his cause of action against the defendant Electro Metallurgical Company, hereinafter called " Electro ", has been assigned by operation of law to the party liable for the payment of his compensation award.

The following facts are undisputed in the papers before this court. The plaintiff herein initiated a so-called " Third Party Action " under section 29 of the New York Workmen's Compensation Law by the service of a summons and complaint against the defendant Union Carbide & Carbon Corporation, hereinafter referred to as " Union Carbide ", on April 13, 1949. It purported to allege a cause of action for personal injuries arising out of an explosion on June 21, 1948, on the premises of Electro in the city of Niagara Falls, New York, at which time plaintiff was employed by a general contractor doing work for Electro. The defendant, Union Carbide, answered the plaintiff's original complaint on June 10, 1949. On June 16th of that year, pursuant to a written stipulation, a supplemental summons and amended complaint was served by the plaintiff upon Union Carbide making Electro an additional party to the action. On the same date, the supplemental summons and amended complaint were served upon a vice-president of Electro, who was a resident of Niagara County, New York, as service upon the defendant, Electro. This service was subsequently set aside as invalid. During the pendency of the question of proper service on Electro, the supplemental summons and amended complaint on September 6, 1949, were served upon the Secretary of State as service upon Electro under section 217 of the General Corporation Law. Union Carbide answered the

amended complaint on June 29, 1949, and on September 28, 1949, Electro served its answer to the amended complaint.

An award of compensation was made to the plaintiff on January 20, 1949. At the time of the explosion, the defendant, Electro, was a West Virginia corporation wholly owned by Union Carbide, a New York corporation, and doing business in this State under a certificate of authority granted in 1908. By an indenture of transfer dated November 30, 1948, which was after the explosion but before suit had been commenced by the plaintiff, Electro transferred all of its assets, subject to all of its liabilities, to Union Carbide. As of December 1, 1948, Electro was dissolved as a corporation pursuant to the laws of West Virginia and thereafter on December 20, 1948, surrendered its authority to do business in the State of New York under section 216 of the General Corporation Law.

It has already been decided as the law of this case that the plaintiff's amended complaint states on its face · facts sufficient to constitute a cause of action against the defendant, Union Carbide. The order of Special Term of the Supreme Court, Niagara County, denying motions by Union Carbide under rule 106 and by Electro under rule 113, was affirmed by the Appellate Division, Fourth Department. (*Capello* v. *Union Carbide & Carbon Corp.*, 277 App. Div. 1017.) The motion of Electro for summary judgment under rule 113 was made on the same grounds as argued on its motion at bar, i.e., that the plaintiff was not the real party in interest since more than one year had elapsed between the origin of the plaintiff's cause of action and the commencement of its action against Electro, and that more than six months had elapsed since the first award of compensation to the plaintiff. Shortly thereafter, the plaintiff also moved under rule 109 to strike out Electro's affirmative defense based upon section 29 of the Workmen's Compensation Law. That motion was heard at the same time as the afore-mentioned motions by the defendants and likewise denied in Special Term. Upon affirmance of the denial of its motions, the defendants moved for leave to reargue the appeal or for an order granting leave to renew the motions upon presentation of additional facts and corrected proof. This motion was denied by the Appellate Division (*Capello* v. *Union Carbide & Carbon Corp.*, 277 App. Div. 1161) but without prejudice to renew the motion at Special Term. The motion before this court is the renewal of the defendants' previous motions, but based on proof of the complete text of the indenture of transfer between Electro and Union Carbide.

The first and most important question in the determination of the motion before this court is to decide the legal relationships among the three parties involved. It would be well to determine what points, if any, in that regard have been decided on the motions already made and decided in this case. The denial of the previous motion by Union Carbide under rule 106, which was affirmed by the Appellate Division, decided only that a cause of action was stated on the face of the complaint. The denial of the previous motion for summary judgment by Electro merely decided that, based on the facts before the Special Term at that time, it could not be found that the plaintiff must as a matter of law or fact fail in his cause against Electro. The Appellate Division in its memorandum of affirmance did not, and, in fact, could not decide the question of the relationship of the parties based upon a knowledge of the complete text of the indenture of transfer between Electro and Union Carbide, since the text of the indenture was not before it. When the defendants sought to reargue their appeal based on the complete text, their motion was denied " without prejudice to renew the motion at Special Term if so advised." (277 App. Div. 1161, *supra.*) Thus it is clear that the issues now before this court have not been previously passed upon.

There are two separate questions presented on defendants' motion herein. They are:

1. Does the plaintiff have a cause of action against the defendant Union Carbide without having first obtained judgment against its predecessor, Electro, the alleged tort-feasor, and having had execution on that judgment returned unsatisfied?

2. Is the plaintiff the real party in interest as to the cause of action against the defendant, Electro, or was such cause of action assigned by operation of law under section 29 of the Workmen's Compensation Law?

It is necessary that the first question be answered before proceeding to the second. It is the claim of Union Carbide on its motion that the complete text of the indenture of transfer shows conclusively that the plaintiff has no cause of action against the defendant Union Carbide. It argues that upon the transfer of assets, Union Carbide became nothing more than a trustee of the creditors and other claimants whose claims had not been satisfied; that the plaintiff's only remedy against the defendant, Union Carbide, is a suit in equity to enforce an obligation against the grantor corporation after such obligation has been liquidated by reducing it to judgment in an action against the grantor, Electro.

A knowledge of the exact nature of the transfer is essential. In the indenture of transfer dated November 30, 1948, the resolution adopted by the board of directors of the grantee, Union Carbide, is set forth *in toto*. It states in essence that the officers of Union Carbide are authorized and directed to accept the transfer and among other items " to assume all the debts and liabilities of every kind and character of the said Electro Metallurgical Company ". By the indenture, the grantor transfers to the grantee all of its assets, the types of which are specified in great detail, " subject, nevertheless, to all of the debts, obligations, liabilities of the said grantor, fixed and contingent ". By paragraph three of the covenant portion of the indenture, the grantee, Union Carbide, " agrees to assume, and hereby does assume, and agrees to pay, satisfy, perform and discharge as they mature and become due and payable, and otherwise in accordance with their terms, all of the debts, taxes, liabilities, contracts, commitments, engagements and obligations, absolute and contingent, of the Grantor, of any nature whatsoever, including, but without limitation, any expenses of the Grantor in effecting the dissolution of the Grantor, and the distribution to the Grantee of the assets of the Grantor, provided, however, that nothing herein contained shall be deemed to prevent the Grantee from defending, adjusting, compromising, settling or otherwise satisfying in good faith any or all of the debts, taxes, liabilities, contracts, commitments, engagements and obligations assumed by the Grantee under this instrument."

It is clear that not only did Union Carbide accept the assets of Electro " subject to " the latter's liabilities, but also affirmatively promised to pay and discharge all of Electro's obligations, both fixed and contingent of whatever nature. The plaintiff was, of course, not a party to this agreement or to any agreement with Union Carbide. No question, therefore, of a novation can be involved. Nor is a suretyship or guaranty arrangement presented since there is herein an absolute undertaking by Union Carbide to pay the obligations of Electro. If anything, it may be argued that Union Carbide became the principal obligor and Electro a surety. (*Williams* v. *Shelly,* 37 N. Y. 375 [1867].) This line of reasoning, however, is not, in the opinion of this court, determinative of the problem presented herein. This court, furthermore, can see no basis for finding that the indenture of transfer constituted a contract of indemnity between the two defendants so that Union Carbide's

promise to pay Electro's obligations would constitute an asset of Electro which the plaintiff could resort to only upon reducing his claim against Electro to judgment. (Cf. *French* v. *Vix,* 143 N. Y. 90 [1894], and *Warsawer* v. *Burghard,* 234 App. Div. 346 [1st dept., 1932].)

The plaintiff herein, in his amended complaint, alleges upon information and belief that on the day of the alleged accident, all of the outstanding capital stock of Electro was owned by the defendant, Union Carbide; that subsequent to that date, and before the commencement of this action, Union Carbide assumed all of the liabilities of the defendant, Electro, while accepting the transfer of all of the latter's assets. Neither defendant denies these allegations. The complaint as against the defendant, Union Carbide, appears to be based on a third-party beneficiary theory. The plaintiff herein, in effect, attempts to sue as a creditor beneficiary of a contract between Union Carbide as promisor and Electro as promisee. He seeks to recover from Union Carbide on its promise to Electro to pay the latter's obligations. In order to succeed as a creditor beneficiary in his suit on a contract to which he was not a party, he must come under the law governing the rights of third-party beneficiaries. In the oft-cited case of *Lawrence* v. *Fox* (20 N. Y. 268 [1859]) the right of a third-party creditor beneficiary to sue on a contract made for his benefit was recognized, although there was no privity of contract between the plaintiff and the defendant. The principle was analyzed in *Seaver* v. *Ransom* (224 N. Y. 233 [1918]), in which POUND, J., attempted to crystalize the existing law by listing the four major categories in which, under New York law, a third-party beneficiary was permitted to sue on contracts made for his benefit. The first such classification consisted of the creditor beneficiary cases, i.e., where there is a pecuniary obligation running from the promisee to the beneficiary. In that connection, the court referred (p. 237) to the existence of " ' a legal right founded upon some obligation of the promisee in the third party to adopt and claim the promise as made for his benefit.' "

Some cases refer to a requirement that it be the intention on the part of the promisee who in the case at bar is Electro, to benefit the creditor when making the contract with his promisor. This consideration is more important in the case of a donee beneficiary type of case than that involving an action by a creditor. Actually, in the latter case the primary intent of the promisee-debtor is to protect himself. The courts, how-

ever, frequently refer to an intention to benefit inferred from the circumstances in order to sustain or deny actions by a third party. (*Van Clief & Sons,* v. *City of New York,* 141 Misc. 216 [1931].) The general viewpoint as to suit by a creditor beneficiary was expressed in *Vrooman* v. *Turner* (69 N. Y. 280, 284 [1877]) wherein the court stated: " A legal obligation or duty of the promissee to him [beneficiary], will so connect him with the transaction as to be a substitute for any privity with the promissor, or the consideration of the promise, the obligation of the promissee furnishing an evidence of the intent of the latter to benefit him, and creating a privity by substitution with the promissor."

The recognition of a direct enforcible right, both at law and in equity, arising from a contract promising performance in the creditor-beneficiary type of case, represents the great weight of American authority. (2 Williston on Contracts [rev. ed.], §§ 356, 361; Restatement, Contracts, §§ 136, 141.)

In actions by a third-party beneficiary, it is unnecessary that he be identified specifically when the contract is made (*Filardo* v. *Foley Bros.,* 297 N. Y. 217 [1948], revd. on other grounds, 336 U. S. 281 [1949]); or that he be aware of the contract when made (*Arnold* v. *Nichols,* 64 N. Y. 117 [1876]), or even that he be in the position of a creditor when the contract was entered into. (*Coster* v. *Mayor of Albany,* 43 N. Y. 399 [1871].)

No New York case has been cited by plaintiff involving an action by a creditor beneficiary under circumstances similar to the facts herein. The well-established rule that a creditor may sue another on the latter's promise to the debtor to pay the debtor's obligations has been recognized in many factual situations. (*Kottler* v. *New York Bargain House,* 242 N. Y. 28 [1926]; defendant, successor of sublessee, who had assumed latter's liabilities, held in action on sublease by original lessee for deficiency in rent under authority of *Lawrence* v. *Fox, supra; Clark* v. *Howard,* 150 N. Y. 232 [1896], creditor to whom assets of debtor were transferred held liable to another creditor on his promise to debtor to pay other creditors of debtor; *Arnold* v. *Nichols, supra,* partner of firm which assumed liabilities when receiving assets of predecessor, held liable by creditor on express promise to pay made to predecessor; *Barlow* v. *Myers,* 64 N. Y. 41 [1876] promise by defendant to debtor to pay debts of latter in form of promissory notes not then due, held for benefit of holder at time promise made and his assignee as third-party beneficiary; *Vulcan Iron Works* v. *Pittsburg-Eastern*

*Co.,* 144 App. Div. 827 [3d dept., 1911] assumption by defendant, for a consideration from promisee, of certain notes of promisee payable to plaintiff held basis of recovery by plaintiff against defendant; *Wood* v. *Macafee,* 172 N. Y. S. 703 [1918], affd. without opinion 191 App. Div. 937 [4th dept., 1920] incoming partner held liable for existing debts of partnership on implied agreement to assume such obligations; *Castle* v. *Rochester Self Binder Co.,* 132 Misc. 276 [1928], sufficiency of complaint by contract creditor of predecessor corporation against successor corporation which assumed liabilities upheld.)

The covenant exacted by Electro from Union Carbide in the indenture of transfer contained a specific promise by the latter to pay the liabilities of the former. It would seem the parties intended to cover contingent claims such as the tort action presented herein since Union Carbide specifically reserved the power to compromise and defend actions arising out of Electro's liabilities. Where, as here, a corporation about to be stripped of its assets receives a promise from its grantee to pay all of its obligations, it appears clear that the creditors of the grantor were intended to be benefited by the inclusion of the grantee's promise in the indenture. Nor is it necessary for this court to base this conclusion completely upon an inferred intention of the grantor promisee since the contingent liability running to the plaintiff by Electro is in the language of the cases such a pecuniary obligation as to be the foundation for the plaintiff's interest in the contract between the defendants. This viewpoint is consistent with the general approach of this department expressed in *Coley* v. *Cohen* (258 App. Div. 292 [4th dept., 1939], motion for leave to appeal denied 259 App. Div. 787 [4th dept., 1940], affd. on appeal after trial 289 N. Y. 365 [1942]) and *Wilson* v. *Costich Co.* (231 App. Div. 346 [4th dept., 1931], affd. without opinion 256 N. Y. 629 [1931]).

It is true that in most cases in which the third-party beneficiary concept has been employed, the plaintiff has sought to enforce a right against the promisee which was based upon a contract. In the principal case the plaintiff seeks to recover in an action at law from the promisor for the alleged tort of the promisee. It is an unliquidated claim. This is a distinction without a difference. If the plaintiff as third-party beneficiary is permitted to sue Union Carbide on a debt owed to him by Electro, it would seem he should be equally able to sue Union Carbide for an unliquidated tort claim against the promisee. It is true that in the latter case liability and damages must be

proved by the plaintiff. These questions present no more difficult problems than that involved in any contract action which Union Carbide as promisor would be entitled to defend and defeat if possible. (See *Fischer* v. *Hope Mut. Life Ins. Co.,* 69 N. Y. 161 [1877].)

The defendants cite *O'Neil* v. *American Radiator Co.* (43 F. Supp. 543 [U. S. Dist. Ct., S. D. N. Y., 1942]) as authority for their position that the plaintiff must liquidate its claim against Electro before proceeding against the successor Union Carbide. The District Court relied on *Muhlenburg Hosp.* v. *Lawyers Title & Trust Co.* (259 App. Div. 238 [1st dept., 1940], affd. without opinion 285 N. Y. 784 [1941]) and *Cunningham* v. *Glauber* (133 App. Div. 10 [1st dept., 1909]) as representing the law of New York on this question. In the former case, the decision turned upon the intention of the private statute providing for the division of the original company. The Appellate Division in its opinion pointed out that the statute created no new form of action on behalf of the plaintiff but, on the contrary, by specifically permitting direct action by the creditors against the original company, evidenced a scheme to protect the rights of the creditors against the original company. There was, therefore, in the *Muhlenburg* case no promise or undertaking on the part of the successor corporation upon which the creditor could base a direct action against the successor company. In *Cunningham* v. *Glauber* (*supra*) it was held only that the plaintiff could not sue the directors of a dissolved corporation as trustees for the negligence of the corporation but must sue the corporation in its own name first. The *Cunningham* case is also distinguishable from the instant case since there the trustees were successors by law and did not assume any promissory obligation as was done by Union Carbide in the facts before this court. An analysis of the New York authorities cited by the District Court in the *O'Neil* case (*supra*) reveals that they are not inconsistent with the right of the plaintiff to sustain a cause of action herein against the defendant, Union Carbide, on a third-party creditor beneficiary theory. It is not clear from the opinion in the *O'Neil* case whether the successor there expressly promised to pay its predecessor's obligations. If such was the case, this court does not agree that the result therein reflects the law of this State. (*Thorp* v. *Keokuk Coal Co.,* 48 N. Y. 253 [1872].)

The conclusion must be reached that the documentary evidence offered by the defendants on this motion in the form of

the indenture of transfer together with the plaintiff's complaint does not show conclusively that the plaintiff must ultimately fail in its cause of action against Union Carbide. The latter's motion, therefore, for summary judgment under rule 113 must be denied.

The second question presented on this motion is whether the plaintiff is the real party in interest to its cause of action against the defendant, Electro. In order to answer this, it is necessary to decide first whether the plaintiff's cause of action has been assigned by operation of law under section 29 of the New York Workmen's Compensation Law. Under that provision, a so-called " third-party action " must be commenced both within six months from the date on which a compensation award is made and within one year from the date of the accrual of the cause of action. In this case, the plaintiff initiated suit and obtained service upon the defendant, Union Carbide, within these periods. Before their expiration, he attempted by an amended complaint to add as a party the defendant, Electro, by serving an officer of that corporation after its dissolution. Service on that officer, a New York resident, was set aside and it was only after the expiration of the two periods mentioned that the plaintiff obtained sufficient service on the defendant, Electro. Was the plaintiff's action deemed to have been commenced as against the defendant, Electro, within the period provided for by section 29? Under section 16 of the Civil Practice Act, an action is deemed to have been commenced when the summons is served upon a codefendant " united in interest with him." If Union Carbide is united in interest with the defendant, Electro, the service upon the former saves the operation of section 29 against the plaintiff, as to Electro.

In the case of *Hatch* v. *Cherry-Burrell Corp.* (274 App. Div. 234 [4th dept., 1948] motion for leave to appeal denied, 274 App. Div. 869 [4th dept., 1948]) it was held that service upon an employee within the period provided by section 29 prevented the application of the assignment provision of that section in favor of the employer who was served after the expiration of the period. It was found that under section 16 of the Civil Practice Act the employer and employee were united in interest so that the action against the employer was deemed to have been commenced upon service of process on the employee within the period provided by section 29. The reasoning of the *Hatch* case is applicable to the case at bar. Here, rather than a relationship of employer-employee with a vicarious lia-

bility imposed on the former, we have a grantor-grantee relationship with a liability imposed by a contract containing an express undertaking by the grantee corporation to pay the liabilities of its predecessor, the grantor. As in the *Hatch* case, the liability herein is derivative, which makes for a unity of interest. In that respect, it is distinguishable from *Marchetti* v. *Linn* (197 Misc. 658 [1950]). The facts before the court are also similar to those in the *Hatch* case in that the plaintiff in both cases effected within the time limits improper service on the defendant sought to be joined.

In *Prudential Ins. Co.* v. *Stone* (270 N. Y. 154 [1936]) the Court of Appeals established the yardstick that defendants are united in interest where the positions of the parties are such that they stand or fall together and that judgment against one similarly affects the other. (See, also, *Croker* v. *Williamson,* 208 N. Y. 480 [1913] and 1 Wait on New York Practice [4th ed.], p. 106.) In that respect this case is not controlled by *Eisenberg* v. *Adler Realty Co.* (299 N. Y. 572 [1949]) wherein the additional defendant sought to be added was a joint tortfeasor. Union Carbide was the sole stockholder of Electro at the time of the accident. Subsequently, it took action to dissolve its subsidiary, Electro, after agreeing to pay its liabilities. The defenses of Union Carbide to the tort claim will, of course, be those of Electro. Their interests are in that respect identical. It cannot be seen how they are otherwise than united in interest.

Based upon a consideration of all the facts in this case, this court concludes that the plaintiff is entitled to the benefit of section 16 of the Civil Practice Act and that, therefore, his service upon the defendant, Union Carbide, commenced his action and precluded the assignment by operation of law provided for in section 29 of the Workmen's Compensation Law. The motion of Electro, therefore, for summary judgment under rule 113 on the ground that the plaintiff is not the real party in interest as against it must be denied.

The defendants' motion in all respects is denied. Enter order accordingly.