■ JOSEPH M. PARADISO, Respondent, v APEX INVESTIGATORS & SECURITY CO., INC., Appellant. — Order, Supreme Court, Bronx County (Silbowitz, J.), entered on January 30, 1981, which denied defendant-appellant Apex' motion to dismiss the complaint for failure to state a cause of action or, in the alternative, for summary judgment, reversed, on the law, and the motion for summary judgment granted, without costs. Plaintiff and another employee were shot during a Pathmark supermarket robbery occurring several minutes after closing time. Defendant Apex furnished security guards and services for the market. The uniformed guard had received permission from the manager to go to the bathroom just before the robbery occurred and did not reappear until after it was concluded. Plaintiff alleges, *inter alia,* that he had failed to lock the door properly before he left and that his presence might have deterred the robbers. The plaintiff testified that an armed masked man burst through the door of the "counting room", where plaintiff was going over the day's receipts and demanded the key. When plaintiff said, "I don't know what key", the nervous robber said "Don't fool around, I want the key", put the gun to plaintiff's arm and "it just went off". The agreement between the parties, as evidenced by the letter agreement nominally covering three other stores, the job descriptions and rules and regulations of defendant and the pretrial testimony of Apex' president, do not reveal any provision specifically creating an obligation to plaintiff. Plaintiff failed to submit any evidence to the contrary. His claim that Apex' services were furnished under "some subsequent agreement, written or oral", is speculative and insufficient to defeat summary judgment. Despite his claims, plaintiff was not a third-party beneficiary of Pathmarks's contract with Apex and was owed no contractual duty of protection against harm. Nor do we find on this record any factual question concerning the assumption of a duty on the part of Apex' unarmed guards to prevent armed robberies. The record reveals no actionable negligence on the part of Apex which precipitated the injury to plaintiff. This wanton injury was not proximately related to the acts or omissions of defendant or a foreseeable consequence thereof. *Bernal v Pinkerton's, Inc.* (52 AD2d 760, affd 41 NY2d 938), is applicable. There the court stated, (pp 760-761), "[b]efore an injured party may recover as a third-party beneficiary for failure to perform a duty imposed by contract, it must clearly appear from the provisions of the contract that the parties thereto intended to confer a direct benefit on the alleged third-party beneficiary to protect him from physical injury * * * It cannot be said as a matter of law that it was the intention of the parties under this contract to provide for the protection of plaintiff * * * Further, it cannot be said that the absence of the guard (who, incidentally, was not required to be armed) from his station was the proximate cause of the shooting * * * Nor was the incident foreseeable even were we to assume that there was an issue of affirmative negligence in this case". Concur — Sandler, J. P., Sullivan, Ross and Carro, JJ.

Kassal, J., dissents in a memorandum as follows: I dissent and would affirm the order denying defendant's motion for summary judgment dismissing the complaint. I fail to perceive the underlying rationale of the majority, which concluded, as a matter of law, that there was no contractual duty owed to plaintiff, a manager of this supermarket, either as a third-party beneficiary or otherwise, where the contract concerning this Queens supermarket, the site of the robbery and the shooting, was not submitted on the motion and is not contained in the record on this appeal. The letter agreement between Apex Investigators and Supermarkets General, by its express terms, covered only the specific locations set forth in the exhibit annexed thereto, which listed three other supermarket locations, all in The Bronx. The agreement does not include the Pathmark supermarket in Whitestone, Queens, where plaintiff had been employed. Although that agreement, according to appellant's president, authorized the furnishing of security at the Whitestone store, the terms of the agreement presented do not support the claim. Moreover, appellant's reliance upon the agreement as prima facie proof that it owed no duty under the facts of this case, a position acceded to by the majority, is in clear conflict with the pleadings served herein. Appellant's answer denies the allegation in paragraph "THIRD" of the complaint that defendant had entered into a contractual agreement with Pathmark to furnish security guards and service at the Pathmark supermarket at 31 Farington Street, Whitestone, Queens. The denial in the answer constitutes a judicial admission, raising a factual question which may be properly considered on the motion for summary relief. In any event, there is a clear factual issue here whether the letter agreement contained within the record actually applied with respect to the Queens location. The deficiency in the proof offered by appellant is in no way remedied by the deposition transcript of the president of Apex. Mr. Rodriguez testified, with respect to appellant's rules applicable to uniformed guards, that the job description and regulations were applicable to the Whitestone store at the time of the occurrence. He did not, however, similarly testify with respect to the letter agreement. Thus, without proof of an underlying agreement, there could be no disposition as to plaintiff's status as a third-party beneficiary as a matter of law. I find the record replete with factual issues sufficient to preclude summary disposition. Appellant relies upon the job description as providing, *inter alia,* that security guards were not obligated to stop shoplifters. Here, however, we are not concerned with a shoplifter, but with an armed robbery. Conceivably, a company in the position of Apex might have an interest in avoiding situations whereby its guards would be placed in the position of accusing persons within the store of shoplifting. Such accusations by security guards as to whether a person intended to appropriate store property or tender payment later at the check-out counter could have an adverse legal (and financial) impact upon Apex. The job description does not specifically deal with the obligation on the part of the security officer to act in the face of an armed robbery, if any, nor does it pertain to his underlying duty to secure the store before leaving his post. Nevertheless, there exists a factual issue as to the extent and nature of the duties to be performed by the security officer, who, although he was not armed, did carry a nightstick. The facts, gleaned from the meager record adduced on the motion, reflect that the incident occurred on June 4, 1978, after 10:00 P.M., when the store had closed. Plaintiff, in the counting room when two men wearing clown masks forced their way in, was shot in the shoulder during the robbery. At the time of commission of the crime, the security guard had gone to the men's room at the rear of the store, allegedly after locking the front doors and giving the keys to the night manager. Raised in issue is whether the security guard properly locked the

doors or failed and neglected to inspect the premises before leaving his post. It is further suggested that the robbery and attack were sufficiently loud to have apprised the security officer that there was trouble afoot. These are more appropriately factual matters to await the trier of the facts. In addition, the rules and regulations of Apex applicable to all members of its uniformed security force, are instructive. They include the following direction: "Under no circumstances will unauthorized persons be permitted to enter the premises or to loiter in unauthorized areas during a Security Officer's tour of duty." Thus, appellant's own rules raise a factual issue with respect to the nature and extent of the obligation owed by the security guard to secure the area, or at least to inspect for "unauthorized persons" before leaving his post. Neither do I agree with the assessment by the majority that there was a failure of proof on the part of the plaintiff in opposing the motion for summary judgment. To the contrary, it was appellant who had moved for summary relief and upon whom there was imposed the burden of establishing, prima facie, its right to judgment as a matter of law (*Zuckerman v City of New York,* 49 NY2d 557, 562; *Friends of Animals v Associated Fur Mfrs.,* 46 NY2d 1065, 1067-1068). The finding that plaintiff failed to submit evidence in opposition to the motion overlooks the fact that the plaintiff, as the party opposing summary relief, was not required to offer any proof unless and until the moving party had established its right to judgment. Here, the proof adduced both in support of and in opposition to the motion was patently insufficient for summary disposition, consisting for the most part of affirmations and affidavits of counsel, without requisite knowledge of the facts. Clearly, the affirmations of defense counsel submitted in support of the motion lacked probative value (*Di Sabato v Soffes,* 9 AD2d 297; *Executive Securities Corp. v Gray,* 67 AD2d 860). Although the transcripts of the examinations before trial were submitted, they are insufficient to finally resolve the action as a matter of law. Moreover, the submission of the transcripts, albeit of probative value, is not designed as a substitute for a party's obligation on such a motion to submit an affidavit by one with requisite knowledge of the facts, as required by CPLR 3212 (subd [b]) (*Executive Securities Corp. v Gray,* 67 AD2d, *supra,* at p 861). I do not subscribe to the view expressed by the majority that *Bernal v Pinkerton's, Inc.* (52 AD2d 760, affd 41 NY2d 938) is controlling here. In the first place, *Bernal* involved a disposition after trial, at which the parties had been afforded a full opportunity to adduce relevant evidence bearing upon the issue of whether, there, a duty was owed by the security guard. The situation is far different from that here, where a final adjudication with respect to the rights of the parties has been made on a most meager record, containing attorney affirmations, supported by a letter agreement which on its face does not apply to the location where the incident occurred. The majority's reliance upon the letter agreement is particularly inapposite in light of the express denial in the answer that there was an agreement. Neither may it be determined, as a matter of law, that the shooting was not proximately caused by the claimed negligent acts or omissions on the part of defendant's security officer. As was observed in a different context by the Court of Appeals in *Nallan v Helmsley-Spear, Inc.* (50 NY2d 507, 520-521), "the fact that the 'instrumentality' which produced the injury was the criminal conduct of a third person would not preclude a finding of 'proximate cause' if the intervening agency was itself a foreseeable hazard". Ordinarily, foreseeability is a factual issue to be resolved by the trier of the facts, not summarily, particularly on the insufficient record here. I conclude on this record that there exist factual issues sufficient to preclude summary disposition. These include the nature and extent of the services to be performed by the security guard. Taking into account the admitted duty on the part of the

guard to lock the exit doors, whether he should have inspected the store and whether such an inspection would have resulted in the discovery of the intruders are matters more appropriately reserved to the trier of the facts. The absence of the written agreement to define the scope of the obligation owed with respect to the Whitestone store further militates against summary disposition. The record, supported by attorney affirmations, is woefully insufficient to finally resolve the legal issues pertaining to the existence and nature of the duty claimed to be owed. Disposition of these issues, I find, should await the trial, particularly taking into account the limited judicial function on a motion for summary relief as issue finding, not issue determination (*Sillman v Twentieth Century-Fox Film Corp.*, 3 NY2d 395, 404; *Esteve v Abad,* 271 App Div 725, 727). Summary judgment, as has been often observed, is a most drastic remedy, which should not be granted where there is any doubt as to the existence of a triable issue (*Moskowitz v Garlock,* 23 AD2d 943, 944). Accordingly, the order, Supreme Court, Bronx County (Silbowitz, J.), entered January 30, 1981, denying appellant's motion for summary judgment dismissing the complaint, should be affirmed.