# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

m 99-41037

_____


JAMES A. COLLINS, STANLEY L. MASON, CURTIS COLICHER,
GLORIA BAILEY, DANA FLORES, R.L. NELSON, JR.,
ROBERT M. CHISTE, AND DAVID J. ATWOOD,

                                        Plaintiffs-Appellants,

VERSUS

MORGAN STANLEY DEAN WITTER
AND
IAN C.T. PEREIRA,

                                        Defendants-Appellees.


_____

Appeal from the United States District Court
for the Southern District of Texas

_____


August 31, 2000


Before JOLLY, SMITH, and BARKSDALE,
    Circuit Judges.

JERRY E. SMITH, Circuit Judge:

    Relying partly on the advice of Morgan
Stanley, later Morgan Stanley Dean Witter &
Co. ("Morgan Stanley"), the board of directors

and stockholders of Allwaste, Inc. ("All-
waste"), voted to merge with Philip Services
Corporation ("Philip"). Each of the plaintiffs
had earned stock options as part of his
compensation while working at Allwaste.

    After the merger, Philip announced that it
had filed inaccurate financial statements for

several years. Upon the announcement, the stock of the now-merged Philip dropped significantly, damaging the value of the employees' post-merger options. The option holders responded by suing Morgan Stanley, claiming contract breach, misrepresentation, fraud, and other causes of action.

The district court dismissed for failure to state a claim. Because we agree that the option holders cannot, under the facts they have pleaded, enunciate any cause of action, we affirm.

I.

By agreement dated February 12, 1997 (the "Agreement"), Allwaste engaged Morgan Stanley to evaluate the possible sale of Allwaste. Morgan Stanley would provide advice, including a financial opinion letter if requested, to the Allwaste board of directors (the "Board"). The Agreement provided that Morgan Stanley had "duties solely to Allwaste" and that any advice or opinions provided by Morgan Stanley could not be disclosed or referred to publicly without Morgan Stanley's consent.

Pursuant to the Agreement, Morgan Stanley analyzed a proposed merger between Allwaste and Philip, whereby Allwaste and Philip would be merged into a new company to be owned by Philip, and each share of Allwaste common stock would be converted into 0.611 shares of Philip common stock. On March 5, 1997, Morgan Stanley provided the Board with a written fairness opinion stating that, based on the information it had reviewed, Morgan Stanley believed that the number of shares of Philip stock to be received for each share of Allwaste stock was "fair from a financial point of view to the holders of Allwaste Common Stock."

Morgan Stanley, however, "express[ed] no opinion or recommendation as to how the holders of Allwaste Common Stock should vote at the stockholders' meeting held in connection with the Merger." The fairness opinion stated that Morgan Stanley had "assumed and relied upon without independent verification the accuracy and completeness of the information supplied or otherwise made available to us by [Allwaste] and Philip for the purposes of this opinion" and that it was written "for the information of the Board of Directors of the Company only and may not be used for any other purpose without [Morgan Stanley's] prior consent," except for filings with the Securities and Exchange Commission.

The opinion was signed by Ian C.T. Pereira, the Morgan Stanley principal with primary responsibility for the Allwaste engagement. According to the complaint, Pereira made oral representations to the Board reiterating the conclusions of the fairness opinion and told certain members of the Board that Morgan Stanley had investigated the management of Philip and determined that it was "clean." On June 30, 1997, Morgan Stanley issued an additional opinion reaching the same conclusions.

The shareholders approved the merger. Each share of Allwaste was converted to 0.611 shares of Philip stock, and each option to purchase a share of Allwaste stock was converted to an option to purchase 0.611 shares of Philips stock.

In early 1998, Philip disclosed that it had filed inaccurate financial statements for several years. This revelation led to a sharp decrease in the price of Philip common stock. The complaint alleged that Morgan Stanley and Pereira had failed to conduct adequate

investigation of Philip or to inform the Board of the problems that ultimately led to the decline in Philip's stock price and the value of plaintiffs' options.

## II.

A motion to dismiss under rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986). The district court may not dismiss a complaint under rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). This strict standard of review under rule 12(b)(6) has been summarized as follows: "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 601 (1969).

*Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997) (some citation information omitted). "In order to avoid dismissal for failure to state a claim, however, a plaintiff must plead specific facts, not mere conclusory allegations. We will thus not accept as true conclusory allegations or unwarranted deductions of fact." *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994) (internal citations, quotation marks and ellipses omitted).

In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto. FED. R. CIV. P. 12(b)(6). Here, the court included, in its review, documents attached not to the pleadings, but to the motion to dismiss. Plaintiffs did not object in the district court to this inclusion and do not question it on appeal.

We note approvingly, however, that various other circuits have specifically allowed that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).[1] In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated.

## III.

Both sides agree that New York law controls construction of the Agreement. The law of New York specifies that only those in privity of contract or who enjoy an intended and immediate third-party beneficiary relationship to a contract may sue thereon[2] and

---

[1] *See also Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994); *Field v. Trump*, 850 F.2d 938, 949 (2d Cir. 1988); *Sheppard v. Texas Dep't of Transp.*, 158 F.R.D. 592, 595 (E.D. Tex. 1994).

[2] *See Strauss v. Belle Realty Co.*, 469 N.Y.S.2d 948, 950 (N.Y. App. Div. 1983) (distinguishing between intended-and-immediate third-party beneficiaries, who may sue on a contract, and

(continued...)

that "[w]here a provision in [a] contract expressly negates enforcement by third-parties, that provision is controlling."[3] Where a clause provides that the contracted-for services will run directly to and for the benefit of the other contracting party, any relevant third parties will be considered incidental rather than intended and immediate.[4]

As the district court recounted, both the Agreement and the fairness opinion specified that the efforts were undertaken at the behest of and for the benefit of the Board alone. The fairness opinion, meanwhile, expressly negated not only enforcement by but reception to third parties. Under New York law, then, the Board is the only entity that enjoyed the right to sue on the Agreement; the option-holder plaintiffs are precluded from doing so.

The option holders respond by pointing to *Glanzer v. Shepard*, 135 N.E. 275 (N.Y. 1922), and *Ultramares Corp. v. Touche*, 174 N.E. 441 (N.Y. 1931), and their progeny. In the former, the court held that a produce weigher was liable to the purchaser of the produce mis-weighed, though the seller contracted with the weigher to act. *See Glazner*, 135 N.E. at 275. In moving beyond the rules of complete privity of contract, the court recognized that it was going beyond the explicit confines of contract law.

> We think *the law* imposes *a duty* toward buyer as well as seller in the situation here disclosed. . . . We do not need to state the duty in terms of contract or of privity. *Growing out of a contract, it has none the less an origin not exclusively contractual. Given the contract and the relation, the duty is imposed by law.* There is nothing new here in principle. . . . It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all. The most common examples of such a duty are cases where action is directed toward the person of another or his property. A like principle applies, however, where action is directed toward the governance of conduct. The controlling circumstance is not the character of the consequence, but its proximity or remoteness in the thought and purpose of the actor. . . . Constantly the bounds of *duty* are enlarged by knowledge of a prospective use.

---

[2](...continued)
incidental beneficiaries, who may not); *Cappello v. Union Carbide & Carbon Corp.*, 103 N.Y.S.2d 157, 161-62 (N.Y. Sup. Ct. 1951) (recognizing suit on a contract deriving from a third-party beneficiary theory as an exception to the general rule that only those in privity may sue on a contract). "An incidental beneficiary is a third party who may derive benefit from the performance of a contract though he is neither the promisee nor the one to whom performance is to be rendered." *Strauss*, 469 N.Y.S.2d at 950. Such incidental beneficiaries may not sue on the contract. *Id.*

[3] *Edward B. Fitzpatrick, Jr. Const. Corp. v. County of Suffolk*, 525 N.Y.S.2d 863, 866 (N.Y. App. Div. 1988).

[4] *Id. See also Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., Inc.*, 485 N.E.2d 208, 211-12 (N.Y. 1985) (setting out circumstances in which New York law finds intended third-party beneficiaries); *Paradiso v. Apex Investigators & Sec. Co.*, 458 N.Y.S.2d 234, 235 (N.Y. App. Div. 1983) (holding that "it must clearly appear from the provisions of the contract that the parties thereto intended to confer a direct benefit on the alleged third-party beneficiary").

*Glanzer, id.* at 275-76 (emphases added).

The new beast that the *Glazner* court explicated was one of tort, not contract. *Glazner* does nothing to enlarge the scope of the power of third-party beneficiaries to sue in contract. *Ultramares*, the first words of which explain that "[t]he action is in tort for damages suffered through the misrepresentations of accountants," manifestly cannot do that work either. *See Ultramares*, 174 N.E. at 442.

Meanwhile, even if *Glazner* were understood to explicate a cause of action sounding in contract rather than tort,[5] it would not so enlarge the grounds for suit as to include the option-holder plaintiffs. Unlike the produce weigher in *Glazner,* Morgan Stanley protected itself with explicit language describing the class of beneficiaries of its efforts: the Board, solely. As noted above, such contractual limitations are honored by the law of New York.

The district court, therefore, rightly concluded that the option-holder plaintiffs may not sue on the Agreement in contract as third-party beneficiaries. To support a claim of contract breach (or the related breach-of-warranty claim), then, the plaintiffs must have pleaded the existence of a valid oral contract. Instead, however, they pleaded, *inter alia*, that

---

[5] *See Glazner*, 135 N.E. at 277, wherein the court delphically mused that

[w]e state the defendant's obligation, therefore, in terms, not of contract merely, but of duty. Other forms of statement are possible. They involve, at most, a change of emphasis. . . . If we fix our gaze upon that aspect, we shall stress the element of contract . . . .

(1) Morgan Stanley employees made representations about the integrity and value of Philip and the propriety of merger to board members who happened to be option holders;

(2) Morgan Stanley was aware that the Allwaste board members would consider the good of the option holders when determining whether to merge;

(3) Morgan Stanley was aware that the Allwaste board did not intend to keep the fairness opinion to itself (despite a specific provision to the contrary);

(4) Morgan Stanley showed the opinion to board members who were also option holders (though the option holders do not specifically allege that the opinion was shown to any option holders who were *not* board members, nor that it rightfully could have been); and

(5) Option holders, who played *as option holders* no role in merger talks or the agreement thereto, somehow relied on Morgan Stanley's representations.

These pleadings do not amount to any but the most conclusional claim that an oral contract existed between Morgan Stanley and the option holders. There is no suggestion of a meeting of the minds between option holders as such and Morgan Stanley and no assertion of consideration. Because the option holders are not, as a matter of law, third-party beneficiaries of the Agreement and meaningfully pleaded no oral contract running between Morgan Stanley and themselves, they cannot state any claim sounding in contract.

## IV.

The district court applied Texas law to the remainder of the claims; neither party challenges this choice-of-law decision. The option holders alleged a variety of tortious claims: professional misrepresentation, negligent misrepresentation, fraud and, generally, "recklessness" and "gross negligence."[6] Whatever the characterization, however, each of these torts shares one necessary element that the option holders, under the facts they pleaded, cannot demonstrate: that they *relied* on Morgan Stanley's alleged misrepresentations.[7]

---

[6] Findings of recklessness or gross negligence would allow exemplary, rather than merely compensatory, damages *were the underlying tort of misrepresentation found*. For reasons we address, it cannot be. *See, e.g., Cook Consultants, Inc. v. Larson*, 700 S.W.2d 231, 239 (Tex. App.SSDallas 1985, writ ref'd n.r.e.).

The option holders also charged Morgan Stanley with breach of fiduciary duty. They made, however, nothing but the most conclusional averments that Morgan Stanley owed them a fiduciary duty. Moreover, they make no effort on appeal to defend, rather than merely reassert, their position that a fiduciary relationship existed. They cannot, therefore, be understood meaningfully to have appealed the dismissal of this cause of action. If they had properly done so, the cause of action would have failed for the same reason as do the other tort claims.

[7] In Texas, accountant liability for misrepresentation follows the Restatement (Second) of Torts, "which provides in the relevant part:

§ 552. Information Negligently Supplied for the Guidance of Others

(continued...)

---

[7](...continued)

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information *for the guidance of others in their business transactions*, is subject to liability for pecuniary loss caused to them *by their justifiable reliance upon the information*, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

*Scottish Heritable Trust, PLC v. Peat Marwick Main & Co.*, 81 F.3d 606, 611-12 (5th Cir. 1996) (emphases added). Fraud, meanwhile, requires that the plaintiff allege

(1) that a material representation was made; (2) that it was false; (3) that the speaker knew it was false when made or that the speaker made it recklessly without any knowledge of the truth and as a positive assertion; (4) that he made it with the intention that it be acted upon by the other party; (5) *that the party acted in reliance upon it*; and (6) damage.

(continued...)

6

Reliance requires action.[8] One relies as a predicate to doing something. The option holders, however, played no role in effecting the merger. They neither authorized it, as did the Board, nor ratified it, as did the shareholders.

The option holders do not aver that they relied; rather, they claim that Nelson relied on Morgan Stanley's representations in casting his vote in favor of merger and that, but for the misrepresentations, he would have demanded a more rigorous accounting or would have opposed the merger. This may be so, but because Nelson cast his vote as a Board member rather than an option holder, he likewise relied only in his capacity as a Board member, because he took no action, as an option holder, that would have occasioned reliance.[9]

It is this lack of reliance by the option holders that distinguishes this case from others cited by the plaintiffs. As we have explained,

---

[7](...continued)
*T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex. 1992) (emphasis added).

[8] *See, e.g., Rumfield v. Rumfield*, 324 S.W.2d 304, 306 (Tex. Civ. App.SSAmarillo 1959, writ ref'd n.r.e.), wherein, in the context of fraud, the court explained that "[n]ot only is materiality an essential element of the deceitful representation, but the defrauded party must have been *induced to act* by reason of his reliance upon the verity of the statement" (emphasis added).

[9] Consistent until the end, the option-holder plaintiffs never were able to distinguish between Nelson's and other Board members' actions *as members of the Board* and their actions *as option holders.*

"justifiable reliance comprises two elements: (1) the plaintiff must in fact rely on the information; and (2) the reliance must be reasonable." *Scottish Heritable Trust*, 81 F.3d at 615. In *Scottish Heritable Trust*, the plaintiffs actually relied on the representations of the defendant-accountants *by buying a controlling interest in the company* that the defendant-accountants had audited. *See id.* at 608.

In *Cook Consultants, Inc. v. Larson*, 700 S.W. 2d 231, 233 (Tex. App.SSDallas 1985, writ ref'd n.r.e.), a surveyor surveyed a home for a homebuilder, and erred. The property was sold to Larson, whose home loan was predicated in part on the guarantees of proper title contained within the property record. *Id.* She eventually prevailed against the surveyor, because without the misrepresentations included within his survey, she would not have *purchased the house*, because she would not have been able to secure a home loan. *See id.* at 237. In other words, though proximate cause was slightly attenuated, Larson relied on the survey in deciding to buy.

Finally, in *Blue Bell, Inc. v. Peat, Marwick, Mitchell & Co.*, 715 S.W.2d 408, 410 (Tex. App.SSDallas 1986, writ ref'd n.r.e.)*,* the plaintiffs relied on the accountant's representations of a trade partner's financial fitness in deciding *to issue a line of credit*. But for the representations, plaintiffs would not have made the credit available and would not have lost it when its trade partner failed to repay. *See id.* at 413.

The option holders' tort claims fail because they cannot aver the first element of justifiable reliance: They did not rely on Morgan Stanley's alleged misrepresentations to do anything, because they were not authorized to

7

act. It does not matter, therefore, that they managed to plead that Morgan Stanley in fact knew that they, as option holders, would be informed of the fairness letter or even that Morgan Stanley *intended* them to be so informed. Nothing about Morgan Stanley's motivations can change the fact that the option holders played no role in the merger proceedings.

## V.

Having addressed the issues raised on appeal, we now fulfill our supervisory role over the district courts[10] by turning to an inappropriate instruction contained in the district court's opinion. At the end of the order granting the motion to dismiss, the court forbade the parties

> to file [anything] further regarding the issues addressed in this Order, including motions to reconsider and the like, unless supported by *compelling* new evidence not available at the time of the instant submissions. Instead, plaintiffs are instructed to seek any further relief to which they may feel they are entitled, on any matter herein addressed, from the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

We notice that the district judge in this matter, like some other district judges in this circuit, has the custom of usually, or even always, prohibiting litigants from filing motions for reconsideration or relief, such as those contemplated by FED. R. CIV. P. 59 and 60. No judge has that authority.

Accordingly, we direct the judge in this case, and others in this circuit, to entertain post-judgment motions as contemplated by the rules. Moreover, the district courts must carefully consider each such motion on its merits, without begrudging any party who wishes to avail himself of the opportunity to present such motions in accordance with the rules of procedure and with the standards of professional conduct.

AFFIRMED.

---

[10] *See*, *e.g.*, *Bryan v. United States*, 492 F.2d 775, 780 (5th Cir. 1974) (en banc).

8

RHESA HAWKINS BARKSDALE, Circuit Judge, dissenting in part:

I concur in part V. of the opinion, concerning our supervisory role.

And, I concur in the discussion in part II. about the district court's reviewing documents referenced in, but *not* attached to, the complaint, because that discussion is helpful *dictum*. Plaintiffs neither objected in district court to, nor challenged on appeal, the district court's engaging in such review; therefore, the point is *not* before us, except to note, as the opinion properly does, the procedure that was followed.

But, because I *cannot* agree plaintiffs can prove *no set of facts* entitling them to recovery, I must respectfully dissent from the action's dismissal being affirmed.

Rule 12(b)(6) is an exacting standard indeed. As the majority recites: "The district court may *not* dismiss a complaint under rule 12(b)(6) 'unless it appears *beyond doubt* that

the plaintiff *can prove no set of facts* in support of his claim which would entitle him to relief'". ***Lowrey v. Texas A & M Univ. Sys.***, 117 F.3d 242, 247 (5th Cir. 1997) (quoting ***Conley v. Gibson***, 355 U.S. 41, 45-46 (1957)) (emphasis added).

The majority's introductory statement, that "the option holders cannot, *under the facts they have pleaded*, enunciate any cause of action" (emphasis added), is an erroneous statement of the above-discussed procedure to be followed in ruling on the failure-to-state-claim motion. Moreover, this erroneous statement sets the tone for the opinion. In fact, it is characteristic of the tenor of the majority's conclusions.

Dismissal at this stage of the proceedings is premature. The majority notes correctly that "[t]he complaint must be *liberally construed in favor of the plaintiff[s]*, and all facts pleaded in the complaint *must be taken as true*". ***Lowrey***, 117 F.3d at 247 (citation omitted;

emphasis added). But, the controlling conclusion that plaintiffs cannot state a claim, because "they were not authorized to act", *ignores* the well-pleaded facts in the complaint. Those allegations — at least for purposes of avoiding Rule 12(b)(6) dismissal — reflect exceptions to the usual limiting rules of liability concerning contracts and corporate actions.

For example, the majority disregards the quite unique importance of stock options at Allwaste. As described in the complaint, plaintiff Nelson, Allwaste's founder, chairman, and holder of a significant number of options, made the employee stock option incentive plan the bedrock of the corporation.

The majority also fails to note that Morgan Stanley issued the second fairness opinion *only upon Nelson's insistence* that it conduct a more thorough review of Philip's management. It was in reliance on Morgan Stanley's representation it *had conducted* such

10

investigation that Nelson and the other directors/option holders recommended the merger with Philip. In other words, because of Morgan Stanley's misrepresentation, board members/option holders voted for the merger, and encouraged shareholders to do the same.

Further, the complaint states:

> The fairness opinion, although requested by the Allwaste board, was rendered wholly or in part for the benefit of Allwaste's shareholders *and option holders*. Moreover, Morgan Stanley was *aware* that the Allwaste board did not intend to keep the fairness opinion to itself and, indeed, the opinion was shown to plaintiff Nelson and other shareholders *and option holders* and *Morgan Stanley knew and intended that it be so used*.

(Emphasis added.) This allegation comports with the claim under § 552 of the Restatement (Second) of Torts because, *at this point*, *we must accept as true* that Morgan Stanley "kn[ew] [the board] intende[ed] to supply" the information in the fairness opinion to the option holders.

The majority has prejudged the merits of this action. In the light of the complaint's specific and unique allegations, I respectfully dissent.