**RED HOOK COMMUNICATIONS I, L.P., formerly known as Ellipse Communications I, L.P., Plaintiff-Appellant**

v.

**ON-SITE MANAGER, INCORPORATED, Defendant-Appellee**

**No. 16-11351**

United States Court of Appeals, Fifth Circuit.

Filed July 3, 2017

Peyton Jameson Healey, Esq., Counsel, Powers Taylor, L.L.P., Dallas, TX, for Plaintiff-Appellant

Kendra J. Hall, Senior Counsel, Procopio, Cory, Hargreaves & Savitch, L.L.P., San Diego, CA, Steven Nelson Williams, McDole Williams, P.C., Dallas, TX, for Defendant-Appellee

Before STEWART, Chief Judge, and JOLLY and WIENER, Circuit Judges.

**PER CURIAM:** *

Plaintiff-Appellant Red Hook Communications I, LP ("Red Hook") appeals the district court's dismissal of its claims against Defendant-Appellee On-Site Manager, Inc. ("On-Site") for lack of subject matter jurisdiction. We affirm the dismissal as modified to reflect a dismissal without prejudice.

## I.

In September 2015, Red Hook and On-Site entered into an Asset Purchase Agreement ("APA"), whereby On-Site would acquire Red Hook. The APA set the base purchase price at $6,000,000 with a holdback provision of $800,000. Pursuant to the APA's payment schedule, On-Site was to pay Red Hook a lump sum, followed by (1) a deferred purchase price ("DPP") of $100,000 on December 25, 2015; (2) the first holdback payment of $200,000 on March 1, 2016; and (3) the remaining balance on September 1, 2016. The holdback payments allowed On-Site to further evaluate the acquired assets and, if necessary, seek indemnification from Red Hook for sale-related damages.

Should On-Site seek indemnification, the APA required it to submit its claim within sixty days of discovering the facts giving rise to the claim. Upon receiving an indemnification notice, Red Hook would have sixty days to provide any objections, after which "[Red Hook] and [On-Site would], for a period of sixty (60) days following delivery of such objection, use good faith efforts to resolve the [d]ispute." If the dispute was not resolved within that timeframe, "[On-Site would] be entitled to initiate such proceedings and seek such reme-

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

dies as may be permitted under the terms of [the APA] and applicable [l]aw."

On-Site failed to make the DPP by the December 25, 2015 deadline. In response, on January 15, 2016, Red Hook wrote to On-Site setting January 22, 2016 as the new DPP deadline and objecting to On-Site's closing calculation of Red Hook's net working capital under APA § 2.4(b) (detailing the closing balance sheet review procedures). In objecting to On-Site's closing net working calculation, Red Hook requested $77,696.83 as reimbursement (the "reimbursement demand") for particular post-purchase payments it made on On-Site's behalf. Sometime after January 22, 2016, On-Site made, and Red Hook accepted, the DPP. According to Red Hook, On-Site never responded to Red Hook's reimbursement demand.

On February 26, 2016, On-Site wrote to Red Hook seeking indemnification for various sale-related costs. On-Site's letter noted that its damages totaled $510,696.35 and that "[b]ecause [it had] provided Indemnification Notices in [an] aggregate amount in excess of $200,000, [it would] not release any funds with respect to the partial release of the Holdback Amount that would otherwise occur on March 1, 2016."

On March 7, 2016, Red Hook wrote On-Site asking for more information regarding the indemnification claims and requesting that On-Site respond by March 10, 2016. On March 22, 2016, Red Hook was notified by On-Site that it was gathering the requested information. Three days later, on March 25, 2016, Red Hook filed this suit against On-Site for breach of contract relating to the DPP payment, reimbursement demand, and initial holdback payment.

On June 13, 2016, On-Site filed a motion to dismiss Red Hook's first amended complaint, arguing that the breach of contract claim was not ripe, given that the sixty day negotiation period allotted in the APA had not elapsed. The district court agreed, finding that "Red Hook's claim to the $200,000 initial holdback amount [wa]s not presently justiciable."

After the district court determined that it lacked jurisdiction, the court evaluated Red Hook's assertion that it was not obligated to comply with the APA's sixty-day negotiation requirement because On-Site had materially breached the contract. The district court concluded that because Red Hook acted as though the contract were continuing after On-Site's alleged breaches, On-Site's failure to timely pay the DPP and the reimbursement demand did not excuse Red Hook from negotiating with On-Site for sixty days before filing suit. Accordingly, the district court dismissed the case with prejudice for failure to state a claim upon which relief could be granted, stating that because Red Hook had prematurely filed suit, thereby materially breaching the contract, "Red Hook [would] lose the ability to contest the $200,000 portion of the holdback, [but would] still have the opportunity to follow [the APA's holdback indemnification procedures] with regard to the remaining $600,000."

Red Hook timely appealed.

## II.

On appeal, Red Hook contends that its claim is ripe because On-Site's bad faith and dilatory tactics excused Red Hook from complying with the APA's indemnification procedures. Red Hook further contends that, even if the district court's jurisdictional analysis is correct, the district court improperly reached the merits by holding that "Red Hook [is barred from] contest[ing] the $200,000 portion of the hold back." On-Site counters that even if its failure to timely pay the DPP material-

ly breached the contract, Red Hook cured any breach by accepting the payment and behaving as though the contract were on-going. Finally, On-Site contends that because the district court's jurisdictional analysis required it to determine whether Red Hook's breach was material, dismissing the case with prejudice was proper.

We review questions of ripeness de novo. *Columbia Cas. Co. v. Ga. & Fla. RailNet, Inc.*, 542 F.3d 106, 110 (5th Cir. 2008). For a federal court to reach the merits of a claim, it must have jurisdiction. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999). Because "[a] dismissal with prejudice is a final judgment on the merits," *Brooks v. Raymond Dugat Co. L C*, 336 F.3d 360, 362 (5th Cir. 2003) (citing *Schwarz v. Folloder*, 767 F.2d 125, 129–30 (5th Cir. 1985)), when a court lacks jurisdiction to hear a case, dismissal must be without prejudice, *Boudloche v. Conoco Oil Corp.*, 615 F.2d 687, 688–89 (5th Cir. 1980) (per curiam) (holding that a district court lacking jurisdiction "erred in granting summary judgment and dismissing with prejudice" because "[without] jurisdiction over the action, it had no power to render a judgment on the merits").

"[W]hen judicial review depends on a particular fact or legal conclusion, then a court may determine whether that condition exists." *Texas v. EPA*, 829 F.3d 405, 420 n.18 (5th Cir. 2016). In evaluating whether a condition precedent has occurred at the motion to dismiss phase, a court may consider documents appended to the complaint. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Similarly, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim." *Id.* at 498–99 (first alteration in original) (quoting

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *see also Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). If the attachments "reveal[ ] facts which foreclose recovery as a matter of law, dismissal is appropriate." *Ass'd Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974).

Under Texas law, a contract that includes conditional language creates a condition precedent, *Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990), "an event that must happen or be performed before a right can accrue to enforce an obligation," *Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex. 1992). A material breach excuses the non-breaching party from upholding its contractual obligations, including some conditions precedent. *Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994). Should the non-breaching party elect to treat the contract as continuing, however, "the previous breach constitutes no excuse for nonperformance on the part of the party not in default and the contract continues in force for the benefit of both parties." *Chilton Ins. Co. v. Pate & Pate Enters., Inc.*, 930 S.W.2d 877, 887 (Tex. App.–San Antonio 1996, writ denied) (internal quotation marks omitted). "[A]ny action indicating an intention to continue will operate as a conclusive choice, ... depriving [the non-breaching party] only of any excuse for ceasing performance on [its] own part." *Compass Bank v. MFP Fin. Servs., Inc.*, 152 S.W.3d 844, 858 (Tex. App.–Dall. 2005, pet. denied).

### III.

The APA's indemnification procedures plainly create a condition precedent that both Red Hook and On-Site must comply

with before either can bring suit.[1] *See Criswell*, 792 S.W.2d at 948. Red Hook alleges it was excused from future performance based on two purportedly material breaches: On-Site's failure to comply with Red Hook's January 15, 2016 reimbursement demand and On-Site's delayed DPP payment.

Further review of the APA reveals that Red Hook's reimbursement demand is not an issue for a court to decide. Unlike APA § 7.3 (detailing holdback indemnification procedures), APA § 2.3 (detailing purchase price adjustments) dictates that, should the parties fail to resolve their dispute within the requisite timeframe, they must go to an independent auditor, whose judgment "will be conclusive and binding upon the parties." Therefore, even assuming On-Site's failure to pay Red Hook's reimbursement demand may be considered a breach at all, the district court lacked jurisdiction to hear the claim.[2] *See City of Meridian v. Algernon Blair, Inc.*, 721 F.2d 525, 528–29 (5th Cir. 1983); *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 268 (Tex. 1992). As for On-Site's late DPP payment, Red Hook accepted the payment and subsequently responded to On-Site's indemnification demand, depriving Red Hook of the option to cease performance and sue for the alleged breach. *See Compass Bank*, 152 S.W.3d at 858. Therefore, On-Site's actions do not excuse Red Hook's non-compliance with the APA's terms. *Id.*

In sum, because a condition precedent has not occurred, the issue is not ripe for adjudication, and, consequently, the district court lacked subject matter jurisdiction to reach the merits.[3] Being that Red Hook's claim is not ripe, the district court erred in reaching the merits by holding that "Red Hook will lose the ability to contest the $200,000 portion of the holdback, [but] will still have the opportunity to follow [the APA's holdback indemnification procedures] with regard to the remaining $600,000." *See Boudloche*, 615 F.2d at 688. Accordingly, we affirm, but modify the district court's judgment to reflect that the dismissal is without prejudice.

## IV.

The district court properly concluded that it did not have jurisdiction but erred in dismissing the case with prejudice. Since the court lacked jurisdiction over the case, it had no power to render a judgment of dismissal on the merits. Therefore, we VACATE the district court's judgment dismissing the case with prejudice, but other-

---

1. The APA states that "the Indemnifying Party and the Indemnified Party will, for a period of sixty (60) days following delivery of such objection, use good faith efforts to resolve the Dispute." Despite this language, Red Hook argues that only On-Site was required to comply with the APA's sixty-day good faith negotiation procedure. We are unpersuaded.

2. Indeed, Red Hook's January, 15, 2016 objection notice says that "should such information not be provided to our Client on a timely basis or should [Red Hook] and On-[S]ite not be able to agree to an amount for the Final Net Working Capital [(the basis for Red Hook's reimbursement demand)] ... an independent certified public accountant firm will need to be retained to conduct a formal audit,

as required under Section 2.4(c), Audit Review, of the [APA]."

3. Red Hook also argues that On-Site has had control over the purchased assets since September 1, 2015, and, therefore, should have been aware of the facts giving rise to its indemnification claim well before it submitted its indemnification demand on February 26, 2016. However, the APA only prevents On-Site from recovering the full claim "to the extent (and only to the extent) that the Indemnifying Party demonstrates actual damage caused by" failing to submit an indemnification claim within sixty-days. It does not bar On-Site from bringing the claim entirely.

wise AFFIRM the dismissal as modified to reflect a dismissal without prejudice.