Barbara TAYLOR, Plaintiff,

v.

Kenneth W. DAM, Acting Secretary, Department of the Treasury, Defendant.

No. CIV.A. H–01–4420.

United States District Court, S.D. Texas.

Jan. 7, 2003.

Barbara Taylor, Houston, TX, pro se.

Hays Jenkins, Jr., Office of U.S. Atty., Houston, TX, for Paul H. O'Neill.

Ralph F. Shilling, Jr., Dept. of Justice, Tax div., Dallas, TX, James M. Donavan, Dept. of Treasury, Dallas, TX, for U.S.

## MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

Pending before the court is Defendant Kenneth W. Dam, Acting Secretary, Department of the Treasury's ("Dam") Motion to Dismiss (# 12). Dam moves to dismiss Plaintiff Barbara Taylor's ("Tay-

lor") claims of race discrimination and retaliation brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000h–6. Having reviewed the pending motion, the submissions of the parties, the pleadings, and the applicable law, and having conducted an evidentiary hearing, the court is of the opinion that dismissal is warranted.

## I. *Background*

Taylor is an African–American female who has been employed since 1984 by the Internal Revenue Service ("IRS"), a branch of the United States Department of the Treasury. Taylor began her employment as a GS–512–09 Revenue Agent. In July and October 1998, she applied for two GS–512–13 Revenue Agent positions, vacancy announcements 03–26–NPB9X103 ("CEP team member" or "CEP Revenue Agent") and 03–26–8X419B ("Group 1616" or "General Program Revenue Agent"). By late January or early February 1999, Taylor learned that she had not been selected for either position.

With respect to the CEP team member announcement, the IRS Personnel Department did not include her application in the package to be ranked, and she was not considered for a CEP team member position. After this oversight came to light, she was subsequently ranked, resulting in her inclusion in the "best qualified" list. Four Caucasian males, however, were selected for the CEP team member positions. As for the General Program Revenue Agent announcement, Taylor was one of three applicants considered for the position, but, unlike the other two applicants, she was not given an *ad hoc* evaluation. Although Taylor made the "best qualified" list, she was not selected for the General Program Revenue Agent position. It was filled instead by another African–American female.

The IRS procedures for complaints and grievances, as negotiated in a collective bargaining agreement ("CBA") between the National Treasury Employees Union ("NTEU") and the IRS, are set forth in NORD V.[1] On February 4, 1999, Taylor filed a grievance with the IRS alleging contractual violations regarding IRS procedures for filling vacancies and promotions, claiming that specific provisions of the CBA were violated with respect to her non-selection for the two GS–13 positions described above. For relief, she requested an "[i]mmediate promotion to a GS 13 in Group 1616 ... and other appropriate and/or mutually accepted remedies."

On March 11, 1999, a first-step grievance meeting was held. An account of the meeting is summarized in a letter dated April 12, 1999, which includes the agency's recommendation to grant Taylor "priority consideration" for the next GS–13 opening for a CEP team member position, noting that she was initially excluded from the package and was later ranked among the "best qualified" candidates. The agency also recommended that Taylor receive "priority consideration" for the next GS–13 opening for a General Program Revenue Agent position, finding that by adding back two points that were improperly removed from the panelists' ratings, Taylor would have been number one on the promotion list. According to Taylor, because the agency could not commit to a time frame in which she would be promoted, she declined this remedy and proceeded to the second step of the grievance procedure.

1. The grievance form Taylor completed on February 4, 1999, alleges that portions of NORD IV were violated. The agency, however, references provisions from NORD V in its responses to her grievance. In Taylor's subsequent request for reconsideration, she refers to NORD V, as well.

A second-step grievance meeting was conducted on May 4, 1999. An account of the meeting is documented in a letter dated May 22, 1999, indicating that the IRS again offered Taylor "priority consideration" for the next available GS–13 position in the Examination Division. The agency found that Taylor's application had been erroneously omitted from the CEP team member ranking package, and, if it had been included, she would have been placed on the "best qualified" list. Taylor again chose not to accept this remedy. Her grievance was ultimately settled on August 27, 1999, when the IRS agreed to promote Taylor to a GS–13 position, effective September 12, 1999.

Prior to the resolution of her grievance, on June 8, 1999, Taylor filed a complaint with the Equal Employment Opportunity ("EEO") Office of the Department of the Treasury alleging race discrimination beginning in 1989 and continuing through the most recent incident of her non-selection for the GS–13 positions described above. Taylor requested in her complaint an immediate promotion to a GS–13 position in the Examination Division with no restrictions on location or group, back pay with interest from the first date of her eligibility for a GS–13 position (July 1989 to the present), and compensation for hardship and suffering from 1992 to the present. In her EEO complaint, she also claimed that she had been retaliated against for her involvement in prior EEO activity through the manipulation of the job announcements as a means of bypassing her for promotion. In order to resolve her complaint, the EEO counselor recommended that management "consider giving Barbara grade 13 back to first priority consideration in 95, or when agreement was signed 6/97." On September 9, 1999, after management declined to implement this recommendation, Taylor was issued a notice of her right to file a discrimination complaint with the Department of the Treasury Re-

gional Complaint Center ("Regional Complaint Center"), which she submitted on September 10, 1999.

The Regional Complaint Center dismissed Taylor's complaint on October 1, 1999, finding that "the matter was raised in a negotiated grievance procedure that permits allegations of discrimination." According to the agency, Taylor's decision to pursue the negotiated grievance procedure constituted an election of a forum, foreclosing a subsequent EEO complaint on the same matter. *See* 29 C.F.R. § 1614.107(a)(4).

On October 25, 1999, Taylor appealed the agency's dismissal to the Equal Employment Opportunity Commission's ("EEOC") Office of Federal Operations, asserting that the "agency had no intentions of fulfilling the outstanding priority consideration . . . when one of the announced positions was awarded to another agent in Ms. Taylor's current work group" and that "the basis for filing the EEO complaint . . . only became apparent during the grievance process that the agency intentionally failed to fill Ms. Taylor's priorities until the filing of the EEO complaint." She further alleged that it "was not apparent of the retaliation and reprisal being taken against Ms. Taylor regarding the past mass grievance settlement which was thought to be long forgotten until after filing a grievance on the non-selection of Revenue Agent (CEP Team Member) and non-selection for Revenue Agent (Group 1616)." On November 29, 2000, the EEOC reversed the agency's decision and remanded Taylor's complaint to the agency for processing, finding that it had failed to include in its final decision the portions of the CBA relevant to the negotiated grievance procedure and the EEO process. *See Taylor v. Department of Treasury,* EEOC Appeal No. 01A00766 (Nov. 29, 2000).

On remand, on January 10, 2001, the Regional Complaint Center dismissed Taylor's complaint on the same grounds (*i.e.,* her election of the negotiated grievance procedure precluded an EEO complaint on the same matter), attaching the relevant portions of the CBA as part of the official record as well as Taylor's written grievance and other related documents. On February 8, 2001, Taylor once again appealed the agency's dismissal of her complaint to the EEOC's Office of Federal Operations. She argued on appeal that her grievance involved only a contractual claim regarding the agency's alleged failure to submit all her paperwork to the ranking panel, and, in contrast, her EEO complaint concerned a claim that she had been subjected to a pattern of discrimination on the basis of race and in reprisal for prior protected activity dating from 1993 until the time of the complaint. She also contended that the focus of the grievance on the proper ranking procedures was distinct from her claim of discriminatory non-selection. Taylor maintained that she retained the right to file an EEO complaint under the CBA because she never raised the issue of discrimination within the grievance process.

On May 31, 2001, the EEOC affirmed the agency's dismissal of her complaint and denied her appeal, finding that her complaint "raises matters raised in a prior grievance that permits allegations of discrimination." The EEOC noted that Taylor's EEO complaint regarding the issue of non-selection was "inextricably intertwined with the grievance to a degree that makes the two claims essentially the same matter." The EEOC rejected Taylor's argument that she could bifurcate her contractual and discrimination claims regarding her non-selection for a GS–13 position by instituting proceedings in both fora. *See Taylor v. Department of Treasury,* EEOC Appeal No. 01A12145 (May 31, 2001). Taylor requested reconsideration, which

the EEOC denied on September 26, 2001. On the same date, the EEOC issued Taylor a notice of right to file a civil action.

Taylor, proceeding *pro se,* instituted this action on December 20, 2001, asserting claims of race discrimination and retaliation under Title VII. Dam seeks dismissal of Taylor's claims pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Dam contends under Rule 12(b)(1) that the court lacks subject matter jurisdiction over Taylor's claims because she failed to exhaust her administrative remedies. Dam argues under Rule 12(b)(6) that Taylor fails to state a claim upon which relief can be granted due to the court's lack of subject matter jurisdiction.

In relation to Dam's motion to dismiss for lack of subject matter jurisdiction, an evidentiary hearing was conducted on December 4, 2002, to address the circumstances under which Taylor developed a "reasonable suspicion" of the discrimination alleged in her complaint. Taylor testified at the hearing that, with respect to the General Program Revenue Agent position, she knew within a week or two of the selection being made (*i.e.,* late December 1998 or early January 1999) that Denise Ruffin ("Ruffin"), an African–American female, had been selected for the position. As for the CEP team member position, she testified that before she filed her grievance on February 4, 1999, she was aware that Raymond Puccetti, Jr. ("Puccetti") and John Jacobs ("Jacobs") had filled two of the four positions and that they were both Caucasian males. Taylor further admitted that after she filed her grievance on February 4, 1999, but before the first-step grievance meeting was conducted on March 11, 1999, she had learned the identity of the other two individuals selected for the CEP positions—Kevin Terpening ("Terpening") and Quentin Wingert, Jr.

("Wingert"). In addition, Taylor conceded that at the time she learned their identities, she also knew they were Caucasian males. Taylor further acknowledged that, as a Union steward, she was aware that both a grievance and an EEO complaint regarding the same matter could not be maintained simultaneously.

## II. *Analysis*

### A. *Standard of Review*

#### 1. *Rule 12(b)(1)*

■ A motion to dismiss filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the subject matter jurisdiction of the federal district court. *See* FED. R. CIV. P. 12(b)(1). " 'A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case.' " *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir.1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir.1996)). Federal courts are courts of limited jurisdiction and, absent jurisdiction conferred by statute or the Constitution, are without power to adjudicate claims. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir.), *cert. denied*, 534 U.S. 993, 122 S.Ct. 459, 151 L.Ed.2d 377 (2001); *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir.1998); *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996); *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir.1994). The burden of establishing federal jurisdiction rests on the party seeking to invoke it. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001), *cert. denied*, —— U.S. ——, 122 S.Ct. 2665, 153 L.Ed.2d 839 (2002); *Howery*, 243 F.3d at 916; *Estate of Martineau v. ARCO Chem. Co.*, 203 F.3d 904, 910 (5th Cir.2000);

*Stockman*, 138 F.3d at 151; *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir.1998). Indeed, "there is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." *Coury*, 85 F.3d at 248 (citing *Strain v. Harrelson Rubber Co.*, 742 F.2d 888, 889 (5th Cir.1984)); *accord Howery*, 243 F.3d at 916 (citing *Kokkonen*, 511 U.S. at 377, 114 S.Ct. 1673).

■ "In ruling on a motion to dismiss for lack of subject matter jurisdiction, a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac V.O.F.*, 241 F.3d 420, 424 (5th Cir.2001), *cert. denied*, 534 U.S. 1127, 122 S.Ct. 1059, 151 L.Ed.2d 967 (2002) (citing *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir.1996)); *accord Ramming*, 281 F.3d at 161; *Robinson v. TCI/US West Communications Inc.*, 117 F.3d 900, 904 (5th Cir.1997); *McAllister v. FDIC*, 87 F.3d 762, 765 (5th Cir.1996). Nevertheless, all uncontroverted allegations in the complaint must be accepted as true. *See Den Norske Stats Oljeselskap As*, 241 F.3d at 424; *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981); *Cloud v. United States*, 126 F.Supp.2d 1012, 1017 (S.D.Tex. 2000), *aff'd*, 281 F.3d 158 (5th Cir.2001), *cert. denied*, —— U.S. ——, 122 S.Ct. 2665, 153 L.Ed.2d 839 (2002). Thus, unlike a motion to dismiss under Rule 12(b)(6), when examining a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the district court is entitled to consider disputed facts as well as undisputed facts in the record. *See Ramming*, 281 F.3d at 161; *Clark v. Tarrant County*,

798 F.2d 736, 741 (5th Cir.1986); *Williamson*, 645 F.2d at 413; *Cloud*, 126 F.Supp.2d at 1017.

■ It is well settled that "a district court has broader power to decide its own right to hear the case than it has when the merits of the case are reached." *Williamson*, 645 F.2d at 413. "Jurisdictional issues are for the court—not a jury—to decide, whether they hinge on legal or factual determinations." *Id.* To determine whether jurisdiction exists, the court will generally resolve any factual disputes from the pleadings and the affidavits submitted by the parties. *See Espinoza v. Missouri Pac. R.R. Co.*, 754 F.2d 1247, 1248 n. 1 (5th Cir.1985). The court may also conduct an evidentiary hearing and "may hear conflicting written and oral evidence and decide for itself the factual issues which determine jurisdiction." *Williamson*, 645 F.2d at 413; *see Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511–12 (5th Cir.), *cert. denied*, 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980). The court must always be mindful, however, of " ' "the first principle of federal jurisdiction," ' " which requires a federal court to dismiss an action whenever it appears that subject matter jurisdiction is lacking. *Stockman*, 138 F.3d at 151 (quoting *Veldhoen*, 35 F.3d at 225 (quoting HART & WECHSLER, THE FEDERAL COURTS AND THE FEDERAL SYSTEM 835 (2d ed.1973))).

■ "Attacks on subject matter jurisdiction under FED. R. CIV. P. 12(b)(1) come in two forms: 'facial attacks' and 'factual attacks.' " *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1260–61 (11th Cir.1997) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990)); *see Williamson*, 645 F.2d at 412; *Menchaca*, 613 F.2d at 511. " 'Facial attacks on the complaint "require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations

in his complaint are taken as true for the purposes of the motion." ' " *Garcia*, 104 F.3d at 1261 (quoting *Lawrence*, 919 F.2d at 1529 (quoting *Menchaca*, 613 F.2d at 511)); *see Williamson*, 645 F.2d at 412. When a facial attack is involved, as with a motion under Rule 12(b)(6), "[a] motion under 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Home Builders Ass'n of Miss., Inc.*, 143 F.3d at 1010 (citing *Benton v. United States*, 960 F.2d 19, 21 (5th Cir.1992)).

" ' "Factual attacks," as in the present case, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." ' " *Garcia*, 104 F.3d at 1261 (quoting *Lawrence*, 919 F.2d at 1529 (quoting *Menchaca*, 613 F.2d at 511)); *see Williamson*, 645 F.2d at 413. "On a factual attack of subject matter jurisdiction, a court's power to make findings of facts and to weigh the evidence depends on whether the factual attack on jurisdiction also implicates the merits of plaintiff's cause of action." *Garcia*, 104 F.3d at 1261 (citing *Lawrence*, 919 F.2d at 1529). If the facts necessary to sustain jurisdiction do not implicate the merits of the plaintiff's cause of action:

> [T]he trial court may proceed as it never could under 12(b)(6) or FED. R. CIV. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evalu-

ating for itself the merits of jurisdictional claims.

*Id.* (quoting *Lawrence,* 919 F.2d at 1529 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977))) (internal quotations omitted).

### 2. *Rule 12(b)(6)*

In contrast, a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the formal sufficiency of the statement of a claim for relief and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming,* 281 F.3d at 161. It is not a procedure for resolving contests about the facts or the merits of a case. *See* 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 1356, at 294 (1990). In ruling on such a motion, the court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *See Ramming,* 281 F.3d at 161; *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir.2000); *Beanal v. Freeport–McMoran, Inc.,* 197 F.3d 161, 164 (5th Cir.1999); *Brown v. Nationsbank Corp.,* 188 F.3d 579, 585 (5th Cir.1999), *cert. denied,* 530 U.S. 1274, 120 S.Ct. 2740, 147 L.Ed.2d 1004 (2000); *Indest v. Freeman Decorating, Inc.,* 164 F.3d 258, 261 (5th Cir.1999). Nevertheless, "the plaintiff's complaint [must] be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged." *Ramming,* 281 F.3d at 161 (citing *Elliott v. Foufas,* 867 F.2d 877, 880 (5th Cir.1989)). Generally, the court may not look beyond the four corners of the plaintiff's pleadings. *See Indest,* 164 F.3d at 261; *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir.1996); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir.1992). The court may, however, consider documents attached to a motion to dismiss if they are referred to in the complaint and are central to the plaintiff's claim. *See Collins,* 224 F.3d at 498 (citing *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir.1993)).

"A motion to dismiss under rule 12(b)(6) 'is viewed with disfavor and is rarely granted.' " *Collins,* 224 F.3d at 498 (quoting *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983)); *accord Lowrey v. Texas A & M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir. 1997). " 'A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)); *see Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Ramming,* 281 F.3d at 161; *Collins,* 224 F.3d at 498; *Brown,* 188 F.3d at 585. " 'The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief.' " *Shipp v. McMahon,* 234 F.3d 907, 911 (5th Cir.2000), *cert. denied,* 532 U.S. 1052, 121 S.Ct. 2193, 149 L.Ed.2d 1024 (2001) (quoting 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, *supra,* § 1357, at 332–36); *accord Collins,* 224 F.3d at 498. "In other words, a motion to dismiss an action for failure to state a claim 'admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts.' " *Ramming,* 281 F.3d at 161–62 (quoting *Tel–Phonic Servs., Inc. v. TBS Int'l, Inc.,* 975 F.2d 1134, 1137 (5th Cir.1992)). Hence, "when considering a Rule 12(b)(6) motion

to dismiss for failure to state a claim, the district court must examine the complaint to determine whether the allegations provide relief on any possible theory." *Id.* (citing *Cinel v. Connick,* 15 F.3d 1338, 1341 (5th Cir.), *cert. denied,* 513 U.S. 868, 115 S.Ct. 189, 130 L.Ed.2d 122 (1994)).

█ In the case at bar, because Dam has filed motions to dismiss under both Rule 12(b)(1) and Rule 12(b)(6), the court may consider whether Taylor has properly invoked this court's subject matter jurisdiction without addressing her substantive claims for discrimination and retaliation. Moreover, when a Rule 12(b)(1) motion is filed in conjunction with a Rule 12(b)(6) motion, the court should assess the Rule 12(b)(1) jurisdictional attack before determining whether the complaint fails to state a claim. *See Ramming,* 281 F.3d at 161 (citing *Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir.1977) (holding that when there is both a want of jurisdiction under Rule 12(b)(1) and a failure to state a claim on which relief can be granted under Rule 12(b)(6), the trial court should dismiss on the jurisdictional ground without reaching the question of failure to state a claim)). "This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.* (citing *Hitt,* 561 F.2d at 608). The court's dismissal of a plaintiff's case because the court lacks subject matter jurisdiction is not a determination on the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction. *See id.* (citing *Hitt,* 561 F.2d at 608).

### B. *Title VII Claims Brought by Federal Employees*

#### 1. *General*

█ Because Congress has waived the government's sovereign immunity for suits alleging discrimination in a government workplace on the basis of race, sex, color, religion, and national origin, a federal employee may bring an employment discrimination lawsuit against a federal agency under Title VII. *See* 42 U.S.C. § 2000e–16. "As a precondition to filing suit in federal court, Title VII specifically requires a federal employee claiming discrimination to exhaust his administrative remedies." *Randel v. United States Dep't of Navy,* 157 F.3d 392, 395 (5th Cir.1998) (citing *Brown v. General Servs. Admin.,* 425 U.S. 820, 832, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976) ("Initially, the complainant must seek relief in the agency that has allegedly discriminated against him")); *accord Fitzgerald v. Secretary, U.S. Dep't of Veterans Affairs,* 121 F.3d 203, 206 (5th Cir.1997); *Jackson v. Widnall,* 99 F.3d 710, 716 (5th Cir.1996); *Francis v. Brown,* 58 F.3d 191, 192 (5th Cir.1995); *Pacheco v. Rice,* 966 F.2d 904, 905 (5th Cir.1992); *Hampton v. IRS,* 913 F.2d 180, 182 (5th Cir.1990). Therefore, the filing of an administrative complaint is a jurisdictional prerequisite to a Title VII action brought by a federal employee. *See Fitzgerald,* 121 F.3d at 206; *Barnes v. Levitt,* 118 F.3d 404, 408 (5th Cir.1997), *cert. denied,* 523 U.S. 1136, 118 S.Ct. 1839, 140 L.Ed.2d 1090 (1998) (citing *Dollis v. Rubin,* 77 F.3d 777, 781 (5th Cir.1995)); *Tolbert v. United States,* 916 F.2d 245, 247 (5th Cir.1990). "The purpose of exhaustion is to give the agency the information it needs to investigate and resolve the dispute between the employee and the employer." *Barnes,* 118 F.3d at 409; *accord Munoz v. Aldridge,* 894 F.2d 1489, 1493 (5th Cir.1990).

█ Title VII authorizes a federal employee to bring a civil action in district court only after either: (1) an appeal to the EEOC; or (2) "final action taken by a department, agency, or unit referred to in subsection (a) of this section." 42 U.S.C. § 2000e–16(c); *see also* 29 C.F.R. § 1614.101 *et seq.* Federal employees,

however, are not required to pursue internal grievances for discrimination in lieu of statutory remedies. *See Maddox v. Runyon*, 139 F.3d 1017, 1020 (5th Cir.1998). Indeed, as observed by the United States Supreme Court, contractual rights under a CBA and the statutory rights provided under Title VII "have legally independent origins and are equally available to the aggrieved employee." *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 49–52, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (determining that employee did not waive or otherwise forfeit his rights under Title VII when he arbitrated a contractual claim under a CBA that involved the same evidence as his Title VII claim).[2]

### 2. Federal Labor–Management Relations Act

The Federal Labor–Management Relations Act ("FLMRA") governs the methods and manner by which a federal employee with exclusive union representation may challenge an adverse personnel decision by a governmental agency employer.[3] *See* 5 U.S.C. §§ 7101–7135; *Perry v. Dalton*, 191 F.3d 461, 1999 WL 699494, at *1 (9th Cir. Sept.8, 1999); *Vinieratos v. United States, Dep't of Air Force*, 939 F.2d 762, 768 (9th Cir.1991). With regard to employment discrimination claims, the Act provides for a binding election of remedies in situations where the contractual procedure encompasses such claims. *See* 5 U.S.C. § 7121(d). " 'Under the terms of the Act, a *federal* employee [with exclusive union representation] who alleges employment discrimination must elect to pursue his claim under either a statutory procedure [ (*e.g.*, the EEO process) ] or a union-assisted negotiated grievance procedure [unless the grievance procedure specifically excludes discrimination claims]; he cannot pursue both avenues, and his election is irrevocable.' " *Maddox*, 139 F.3d at 1021 (emphasis in original) (quoting *Vinieratos*, 939 F.2d at 768 (citing 5 U.S.C. § 7121(d))). Section 7121(d) of the FLMRA provides:

> An aggrieved employee affected by a prohibited personnel practice under section 2302(b)(1) of this title which also falls under the coverage of the negotiated grievance procedure may raise the matter under a statutory procedure or the negotiated procedure, but not both. An employee shall be deemed to have exercised his option under this subsection to raise the matter under either a statutory procedure or the negotiated procedure at such time as the employee timely initiates an action under the applicable statutory procedure or timely files a grievance in writing, in accordance with the provisions of the parties' negotiated procedure, whichever event occurs first. Selection of the negotiated

---

**2.** Neither the Supreme Court nor the Fifth Circuit has addressed whether a collectively bargained waiver of a federal judicial forum for a statutory claim of employment discrimination would ever be valid. *See Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 82, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998) (finding alleged union waiver of employee's right to a federal judicial forum for employment discrimination claim to be unenforceable when it was not clear and unmistakable and CBA did not contain anti-discrimination provision); *see Alford v. Dean Witter Reynolds, Inc.*, 939 F.2d 229, 230 (5th Cir.1991) (holding that Title VII claims can be subjected to compulsory arbitration as provided in an individual employment contract rather than a CBA) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)). Because Dam does not assert that the CBA in this case contains an explicit, clear, and unmistakable waiver of statutory claims in favor of arbitration, the court need not reach that issue.

**3.** The NTEU is the exclusive representative of IRS employees. *See National Treasury Employees Union v. Federal Labor Relations Auth.*, 793 F.2d 371, 372 (D.C.Cir.1986) (discussing IRS service center employees).

procedure in no manner prejudices the right of an aggrieved employee to request the Merit Systems Protection Board to review the final decision pursuant to section 7702 of this title in the case of any personnel action that could have been appealed to the Board, or, where applicable, to request the Equal Employment Opportunity Commission to review a final decision in any other matter involving a complaint of discrimination of the type prohibited by any law administered by the Equal Employment Opportunity Commission.

5 U.S.C. § 7121(d). "Prohibited personnel practices" include race discrimination and reprisal related to a personnel action such as a promotion. *See* 5 U.S.C. § 2302(a)(2)(A)(ii), (b)(1)(A), (b)(9)(A)-(B).

With regard to the relationship between EEO complaints and negotiated grievance procedures, the EEOC has promulgated a regulation implementing Section 7121(d), which provides in pertinent part:

> An aggrieved employee who files a complaint under this part may not thereafter file a grievance on the same matter. An election to proceed under a negotiated grievance procedure is indicated by the filing of a timely written grievance. An aggrieved employee who files a grievance with an agency whose negotiated agreement permits the acceptance of grievances which allege discrimination may not thereafter file a complaint on the same matter under this part 1614 irrespective of whether the agency has informed the individual of the need to elect or of whether the grievance has raised an issue of discrimination. Any such complaint filed after a grievance has been filed on the same matter shall be dismissed without prejudice to the complainant's right to proceed through the negotiated grievance procedure including the right to appeal to the Commission from a final decision. . . .

29 C.F.R. § 1614.301(a). In interpreting Section 1614.107(a), the regulation addressing dismissals of complaints, the EEOC has held that "in order to be the 'same claim' a complainant must set forth the 'identical matter' raised in the previous complaint." *Throndson v. Reno,* EEOC Request No. 01985083, 1999 WL 767697, at *2 (Sept. 9, 1999) (citing *Russell v. Department of the Army,* EEOC Request No. 05910613, 1991 WL 1189566, at *2 (Aug. 1, 1991)). The Federal Circuit, after examining the legislative history of the Civil Service Reform Act, has determined that the term "matter," as used in 5 U.S.C. § 7121(d), refers to the "underlying [employment] action." *Bonner v. Merit Sys. Prot. Bd.,* 781 F.2d 202, 204–05 (Fed.Cir. 1986); *accord Facha v. Cisneros,* 914 F.Supp. 1142, 1148 (E.D.Pa.), *aff'd,* 106 F.3d 384 (3d Cir.1996); *Macy v. Dalton,* 853 F.Supp. 350, 353 (E.D.Cal.1994).

 Thus, an aggrieved federal employee must elect an exclusive administrative remedy and fully exhaust the remedy chosen. *See Vinieratos,* 939 F.2d at 772. Under either the grievance or statutory procedure, however, after administrative exhaustion, the employee is entitled to seek judicial review of his or her discrimination claims. *See Linthecome v. Department of Treasury,* No. 00–CV–1172–P, 2001 WL 1446176, at *3 n. 1 (N.D.Tex. Nov.13, 2001), *aff'd,* 45 Fed. Appx. 323, 2002 WL 1860532 (5th Cir. June 27, 2002). Nevertheless, "[w]hen a federal employee obstructs the smooth functioning of a properly elected administrative process and abandons that process to pursue a remedy elsewhere, he fails to exhaust his chosen remedy and thereby forecloses judicial review." *Vinieratos,* 939 F.2d at 772.

### 3. *Election of Remedies*

Dam asserts that Taylor's discrimination claim is barred because she failed to ex-

haust her administrative remedies. Specifically, Dam argues that Taylor made an irrevocable election to pursue her claims concerning her non-selection for the two GS–13 positions through the negotiated grievance procedure, failed to appeal the final agency decision concerning her grievance to arbitration, and, instead, abandoned the grievance process to pursue another avenue of relief—the EEO process.

Although implicitly acknowledging that Taylor's grievance did not raise a discrimination claim, Dam contends that Taylor was precluded from raising such a claim in an EEO discrimination complaint, as she had previously filed a grievance challenging the same underlying employment action (*i.e.*, her non-selection for the GS–13 positions) with "an agency whose negotiated agreement permits the acceptance of grievances which allege discrimination." 29 C.F.R. § 1614.301(a); *see Bonner*, 781 F.2d at 204. Dam maintains that this case falls squarely on point with a decision issued by a district court in the Northern District of Texas because Taylor knew the identity and races of those selected for the GS–13 positions before the first-step grievance meeting on March 11, 1999, but she continued to pursue the grievance process and, thus, made a valid election of the contractually negotiated forum. *See Linthecome*, 2001 WL 1446176, at *2. According to Dam, after the agency's second-step response, Taylor came to the realization that she was not going to attain the remedy she desired from the agency and turned to a different forum for additional relief by filing an EEO complaint.

According to Taylor, she did not make an election of remedies as to her discrimination claim when she filed her grievance on February 4, 1999. In her response to Dam's motion to dismiss, Taylor claims that she "was not aware of the race of the other candidates selected for the promotion until after the second-step griev-

ance decision was rendered." She further attests in an affidavit attached to her response, "I reasonably expected that I was being subjected to discrimination when I learned that one of the candidates was white and when the step two ruling was issued [*i.e.*, May 22, 1999] in retaliation for me having engaged in protected activity."

During the evidentiary hearing, however, Taylor admitted that she knew the names and races of three of the persons selected for the GS–13 positions before she filed her grievance on February 4, 1999. In this regard, Taylor testified:

THE COURT: ... So you filed a grievance—

THE WITNESS: Uh-huh.

THE COURT: —February 4th.

THE WITNESS: Right. And—

THE COURT: Okay. At that time when you filed the grievance, did you know the names of the people who got the jobs?

THE WITNESS: Did I know the names of everybody? No.

THE COURT: Yes. Who did you know the names of?

THE WITNESS: Of Raymond, of Denise, and I want to say John Jacobs because John Jacobs' name might have been one of the ones that was named through the grapevine but—

\* \* \* \* \* \*

THE COURT: Okay. So before February 4th, you knew Denise had gotten the job—

THE WITNESS: Uh-huh.

THE COURT: —because that was earlier, right?

THE WITNESS: Uh-huh, yes.

THE COURT: And then Raymond had gotten the job and John Jacobs had gotten the job.

THE WITNESS: Right.

THE COURT: And that you knew that Raymond and John Jacobs were White males.

THE WITNESS: Right.

In response to a document request made by Taylor after she filed her grievance, she received the entire ranking packet of everyone who had applied for the GS–13 positions. Taylor testified that she learned the identities of the other two people (*i.e.,* Quentin and Terpening) who had been selected to fill the CEP team member positions two to four weeks after she filed the grievance on February 4, 1999. At the hearing, she elaborated:

Q: Did you have that information by the time you went to your first-step grievance meeting?

A: I'm not for sure; I might have. I'm thinking—

\* \* \* \* \* \*

Q: You wouldn't have gone to that grievance hearing without that information, would you?

A: No, no.

Q: So you would have it by then?

A: Yeah, yeah.

\* \* \* \* \* \*

THE COURT: Okay. So by March 11th, '99, you knew—

THE WITNESS: Yes.

THE COURT: You had your interview with these people. Did you know at this point that these other two people were White? The other people who got it?

THE WITNESS: Yes.

Thus, it is apparent that contrary to her prior assertions in her response to Defendant's motion, Taylor knew the names and races of the selectees for both GS–13 positions before the first-step grievance meeting was held on March 11, 1999.

Moreover, it is undisputed that Article 41 of the CBA between the IRS and the NTEU permits the consideration of grievances alleging discrimination on the basis of race, color, religion, sex, national origin, age, or handicap. Hence, in order to apply 29 C.F.R. § 1614.301(a), a valid election of remedies on the part of the employee is required. The EEOC has determined that the option of electing a forum arises at the time the complainant learns of the purported discrimination. *See Joos v. Department of Treasury,* EEOC Request No. 05930436, 1994 WL 1841156, at \*3 (Feb. 17, 1994); *Mota v. Department of Treasury,* EEOC Request No. TD92–4033, 1992 WL 1371649, at \*1 (June 30, 1992); *Girtman v. Department of Health & Human Servs.,* EEOC Request No. 05910659, 1991 WL 1189611, at \*3 (Oct. 31, 1991). In this regard, the EEOC has adopted a "reasonable suspicion" standard, rather than a "supportive facts" standard, to determine when the limitation period commences. *See Hoffman v. Runyon,* EEOC Request No. 05960006, 1996 WL 710868, at \*3 (Dec. 6, 1996). "Thus, the [45–day] limitation period [to contact an EEO counselor pursuant to 29 C.F.R. § 1614.105(a)(1)] is not triggered until a complainant should reasonably suspect discrimination, but before all the facts that would support a charge of discrimination have become apparent." *Id.*

■ In the case at bar, the circumstances existing both at the time Taylor filed her grievance on February 4, 1999, and when the first-step grievance meeting was conducted on March 11, 1999, were sufficient for her to have developed a reasonable suspicion of discrimination. At the evidentiary hearing, Taylor conceded that she knew the names and races of the individuals selected to fill the General Program position and two of the CEP team member positions before she filed her grievance. She further admitted that by the time she went to the first-step grievance meeting, she knew the names and races of all the individuals chosen to fill

the positions at issue. Thus, contrary to her prior contention, Taylor was aware of facts that would have led to a reasonable suspicion of discrimination by the time she filed her grievance or, at the latest, by the first-step grievance meeting. Nevertheless, she moved forward with the first-step grievance meeting, received a response from the agency, appealed the decision, participated in a second-step grievance meeting, and received another reply from the agency. Only after learning the agency's second-step response on May 22, 1999, and not receiving the relief she sought, did she file an EEO complaint. Then, without ever asserting a discrimination claim in the negotiated grievance process, she abandoned the contractual procedure before fully exhausting her contractual remedies.

By continuing to pursue her grievance despite her knowledge concerning the races of the recipients of the GS–13 positions, Taylor made a valid election between the statutory procedure and the negotiated procedure. *See Linthecome,* 2001 WL 1446176, at *4. Although she could have raised her allegations of race discrimination and retaliation in the grievance process and obtained full relief, she opted not to do so. Hence, in light of Taylor's failure to exhaust the administrative remedy she initially selected—the contractual grievance procedure—her present action is barred from consideration by this court and must be dismissed for lack of jurisdiction. *Id.* (citing *Brown,* 425 U.S. at 835, 96 S.Ct. 1961; *Fitzgerald,* 121 F.3d at 206; 42 U.S.C. § 2000e–16(c)).

III. *Conclusion*

Accordingly, this court lacks subject matter jurisdiction over Taylor's claims of race discrimination and retaliation under Title VII, as she has failed to exhaust her administrative remedies. Consequently,

Dam's Motion to Dismiss under Rule 12(b)(1) is GRANTED.

IT IS SO ORDERED.